**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MATTHEW LINGLEY and SANDY PAPADOPOULOS, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

SEEKING ALPHA, INC.,

*Defendant*.

Civil Action No.:1:23-cv-5849

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Matthew Lingley and Sandy Papadopoulos, on behalf of themselves and all others similarly situated, file this class action complaint against Defendant Seeking Alpha, Inc. ("Seeking Alpha" or "Defendant"). Defendant is breaking the law on a massive scale by operating a nationwide business that provides personalized investment advice through its website and client electronic mail alerts, all without having registered with appropriate state or federal authorities. Defendant's abject failure to register requires Defendant to, at a minimum, disgorge all fees it has collected from class members. Accordingly, Plaintiffs seek rescission and restitution on behalf of themselves and those similarly situated. In support of their complaint, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1. Defendant operates a nationwide investment-adviser firm that primarily delivers personalized investment advice through its website and through electronic mail to its clients.

2. Defendant sells investment advice to clients through two premium subscription services: (1) Seeking Alpha Premium, and (2) Seeking Alpha Pro (together, the "Premium Services").

3. The Premium Services provide customized investment advice to subscribers, including personalized recommendations based on Defendant's proprietary "Quant Ratings" tailored to each individual subscriber's portfolios.

4. Defendant touts that its recommendations substantially outperform typical stock indices like the S&P 500.

5. Defendant charges Premium Service subscribers hundreds or thousands of dollars per year in exchange for the personalized investment advice they receive.

6. According to Defendant's advertising materials, the Premium Services have over 200,000 subscribers.

7. On information and belief, Defendant collects in excess of $40 million annually as compensation for its unregistered investment advice.

8. With the provision of investment advice comes a significant risk for market manipulation, insider trading, front-running, and conflicts of interest, especially for an investment adviser of Defendant's size and scope.

9. That is why every federal and state jurisdiction in the country requires investment advisers to register with the appropriate authorities. These registration requirements for investment advisers are not mere check-the-box exercises. Rather, they are critical to protecting investors.

10. *First*, registration allows regulators to ensure investment advisors comply with the law. Registration is the primary mechanism by which the Securities and Exchange Commission's ("SEC") Division of Examinations and similar state regulatory agencies identify investment advisers (whether registered with the SEC or at the state-level) for examinations that ensure compliance with the rules and regulations applicable to investment advisers. In other words, if an investment adviser does not register, the SEC and comparable state regulators do not even know to look for potential problems.

11. *Second*, registration also promotes disclosure and transparency. Registered investment advisers must file disclosures that enable clients and regulators to understand important key details about investment advisers' business—such as policies related to conflicts of interest, fees and other important business practices. Each registered investment adviser must annually file or update a state or federal Form ADV with the SEC or state regulators, which then becomes available to the general investing public and regulators through the SEC's investment adviser public disclosure website (https://adviserinfo.sec.gov).

12. But despite offering investment advice in exchange for compensation as its primary business, Defendant is not registered as an investment adviser, either with the SEC or with any of the states in which it conducts business.

13. Defendant's failure to register renders its provision of investment advice illegal and vitiates any agreements with its subscribers.

14. Accordingly, Plaintiffs and the class are entitled to a refund of the tens of millions of dollars Defendant has received in exchange for its illegal investment advice, plus interest at any applicable statutory rate.

## PARTIES

15. Defendant, on information and belief, is a corporation organized under the laws of Israel, with its principal place of business at 47 Ha'Nissim, Ra'anna, Israel – 71. Defendant has a registered office in the Southern District of New York located at 52 Vanderbilt Ave, Floor 13, New York, NY 10017-3837. Defendant is registered to do business in New York as a foreign corporation with the New York Secretary of State. Defendant's website contains "terms of use" that purport to function as a contract between Defendant and the users of the website and its Premium Services. A true and correct printout of Defendant's "terms of use" is attached as Exhibit A.

16. Matthew Lingley is a resident of New York, New York. He is a paid subscriber of Defendant's Seeking Alpha Premium service.

17. Sandy Papadopoulos is a resident of Atlanta, Georgia. He is a paid subscriber of Defendant's Seeking Alpha Premium service.

## JURISDICTION AND VENUE

18. This Court has primary subject-matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds the sum of $5,000,000 and the matter is a class action in which the named Plaintiffs are citizens of the United States and the Defendant is a foreign corporation.

19. Venue is proper in the Southern District of New York because Defendant maintains an office in this district and regularly conducts business in person in this district. In addition, Defendant has submitted to "the personal and exclusive jurisdiction of the federal and state courts located in New York County, New York" in the terms of use on its website.

## SUBSTANTIVE ALLEGATIONS

20. Defendant provides personalized investment advice to subscribers of its Premium Services in exchange for compensation.

21. Defendant holds out its Premium Services as a way for investors to make more money in the stock market.

22. For example, the Seeking Alpha website advertises its Premium Services as follows:




23. The information and recommendations that Defendant provides exclusively to subscribers of the Premium Services relate to securities.

24. Specifically, most of the Premium Services' content relates to publicly traded equity securities and funds listed on national stock exchanges, such as NASDAQ and the New York Stock Exchange.

25. Defendant touts that its proprietary "Quant Rating System" outperforms traditional stock indices "by more than 4-to-1."

26. For example, Defendant's website states as follows:




27. Subscribers to the Premium Services do not simply get access to Defendant's proprietary stock rating system—they receive access to a wealth of other personalized investment advice.

28. The images in Paragraphs 29 through 45 below are screenshots that were taken of Defendant's tutorials showing the various features and functions of the Premium Services.

29. Defendant offers proprietary "Quant Rating[s] and Factor Grades," exclusively available to subscribers of the Premium Services, for thousands of individual securities:




30. Defendant's "Quant Ratings" are similar to recommendations by traditional securities analysts. Each stock is given an overall grade, such as "Strong Buy" or "Hold."

31. Defendant's classifications of a stock's Quant Rating recommendation are reviewed each day and the recommendations are changed whenever market conditions, stock characteristics or other factors dictate. In other words, Defendant's

recommendation for any particular security could change daily in response to new information.

32. Premium Service subscribers obtain access to multiple sets of stock ratings—proprietary "Quant" ratings, aggregated ratings by independent authors who post articles on the Seeking Alpha website, and aggregated ratings of Wall Street analysts:




33. Defendant provides its ratings or other information regarding securities on a personalized basis.

34. For instance, clients link their brokerage accounts to the Premium Services so that Defendant can track each subscribers' individual portfolios and provide customized recommendations and alerts:




35. Premium Services subscribers also manually enter their portfolio and receive the same tracking service and customized recommendations.

36. Defendant tracks the portfolios of subscribers and sends them individualized emails each day alerting them to ratings changes and recommendations for their investments:




37. Defendant provides "on-site warnings" to subscribers that stocks in their portfolio are "at high risk of performing badly":




38. Defendant provides subscribers of the Premium Services with the ability to automatically review stocks as potential investments based on criteria selected by Defendant or by the subscriber.

39. Defendant calls this automated investment review feature "screens" or "screeners":




40. Defendant offers a number of pre-defined screeners that subscribers can use based on their individual "investment style or preferences":




41. Defendant also permits subscribers to create custom, personalized screeners to filter investment opportunities:




42. The screeners, whether pre-defined or custom, update in response to market conditions and changed circumstances, such as changes in reported earnings or dividends for a company.

43. Defendant offers subscribers the ability to compare potential investment opportunities, showing a side-by-side comparison of essential stock information:




44. Defendant offers pre-defined comparisons of various stocks to allow Premium Service subscribers to select comparisons that fit their "investment style or preferences":




45. Subscribers can also create custom comparisons:




46. These are just a few of the many services Defendant provides exclusively to Premium Services subscribers.

47. A true and correct printout of Defendant's overview of the features of its Seeking Alpha Premium service is attached as Exhibit B.

48. A true and correct printout of Defendant's overview of the features of its Seeking Alpha Pro service is attached as Exhibit C.

## CLASS ALLEGATIONS

49. Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a) and (b)(3) as a class action on behalf of themselves and the following class: all persons or entities in the United States who have subscribed to and paid compensation for the Defendant's Premium Services.

50. Although Plaintiffs do not know the exact size of the Class or the identities of all members of the Class, upon information and belief, that information can be readily obtained from the books and records of the Defendant.

51. According to the Defendant's marketing materials, the Class has more than 200,000 members, and Plaintiff believes that the Class members are widely disbursed geographically. Accordingly, the Class is so numerous that joinder of all members is impracticable.

52. The claims of the Class involve common questions of law and fact, including but not limited to the following:

- Whether the Defendant is an investment adviser;
- Whether the Defendant is registered under the laws of the United States or any state as an investment adviser;
- Whether the Defendant was exempt from registration;
- Whether the Defendant must refund compensation received from the Class members;
- Whether the Defendant must pay pre-judgment interest on the amount of compensation it received from Class members;
- Whether the Defendant's contracts with Class members are void;
- Whether the Defendant's contracts with the Class members should be rescinded;
- Whether the Defendant owes restitution to the Class members.

53. The common questions of law and fact predominate over any potential individual issues.

54. Plaintiffs' claims are typical of the claims of all other members of the Class.

55. Plaintiffs' interests do not conflict with the interests of any other member of the Class, in that Plaintiffs and the other members of the Class were subjected to the same unlawful conduct.

56. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent legal counsel experienced in class-action and complex litigation.

57. Plaintiffs are adequate representatives of the Class, and together with their attorneys, are able to and will fairly and adequately protect the interests of the Class and its members.

58. A class action is superior to other available methods for the fair, just and efficient adjudication of the claims asserted herein.

59. Joinder of all members of the Class is impractical, and for financial and other reasons, it would be impractical for individual members of the Class to pursue separate claims.

60. Moreover, the prosecution of separate actions by individual members of the Class would create the risk of varying and inconsistent adjudications and would unduly burden the courts.

61. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

**COUNT I**
**Rescission and Restitution**

62. Plaintiffs incorporate by reference the preceding allegations.

63. Defendant, for compensation, engages in the business of advising others, directly or through publications and writing, as to the value of securities and as to the advisability of investing in, purchasing, and selling securities.

64. Defendant, for compensation and as part of a regular business, issues and promulgates analyses and reports concerning securities.

65. Defendant is an investment adviser as defined in the Investment Advisers Act of 1940 and the laws of all 50 states and the District of Columbia. *See*, *e.g.*, 15 U.S.C. § 80b-2(11); N.Y. Gen. Bus. Law § 359-eee(1)(a); O.C.G.A. § 10-5-2 (17).

66. Defendant was required to register as an investment adviser, either with the SEC or with the states in which it has clients. *See*, *e.g.*, 15 U.S.C. § 80b-3(a); 15 U.S.C. § 90b-3a(a) (stating that state-registered investment advisers with assets under management of less than $25M generally are not permitted to register with the SEC); 17 C.F.R. § 275.203A-2(d) (permitting an investment adviser to register with the SEC if it would be required to register in 15 or more states); N.Y. Gen. Bus. Law § 359-eee(2)(a); O.C.G.A. § 10-5-32(a).

67. Defendant is not registered as an investment adviser with the SEC.

68. Defendant is not registered as an investment adviser with any state.

69. Contracts for the provision of investment adviser services by an unregistered investment adviser are void.

70. Defendant's contracts with Plaintiffs and the members of the Class were void ab initio because Defendant was an unregistered investment adviser.

71. The statutory schemes requiring the registration of investment advisers are not mere taxation or revenue-generating schemes, rather they are designed to protect the investing public.

72. Plaintiffs and the members of the Class are members of the class of citizens sought to be protected by laws requiring registration of investment advisers.

73. Plaintiffs and the members of the Class are entitled to rescind their contracts with the Defendant.

74. Defendant owes to Plaintiffs and the members of the Class restitution of all compensation paid under the void contracts under either the common law or an implied private right of action in every state that does not have an express statutory right of action. *See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979) (holding that the Investment Advisers Act of 1940, upon which the registration provisions of various state laws are based nearly verbatim, supports an implied private right of action for rescission and restitution).

75. Because Defendant operated as an unregistered investment adviser, Defendant owes Plaintiffs and members of the Class a refund of the compensation it collected, plus pre-judgment interest, costs and attorneys' fees in every state that has adopted a statutory remedy. *See*, *e.g.*, O.C.G.A. § 10-5-58(e).

76. The following jurisdictions have adopted an express statutory cause of action permitting clients of an unregistered investment advisers to recoup fees paid to the adviser: Alabama, Alaska, Arkansas, Colorado, Connecticut, the District of

Columbia, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Texas, the United States Virgin Islands, Vermont, Virginia, Wisconsin and Wyoming.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

A. Declare that Defendant's conduct as an unregistered investment adviser violates the laws of all fifty states and the District of Columbia;

B. Certify the Class as requested herein;

C. Rescind the purported contracts between the Defendant and the members of the Class as void *ab initio*;

D. Order the Defendant to refund all compensation paid by Plaintiffs and other members of the Class;

E. Order the Defendant to pay pre-judgment interest at the relevant statutory rates to Plaintiffs and Class members who reside in states providing for such a remedy;

F. Order the Defendant to pay reasonable attorneys' fees; and

G. Order any other such relief as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all claims so triable.

Respectfully submitted this 7th day of July, 2023.

*/s/ Joshua A. Mayes*
Joshua A. Mayes (*pro hac vice* pending)
Jason S. Alloy*
Matthew T. Parrish*
Edward A. Bedard*
ROBBINS ALLOY BELINFANTE LITTLEFIELD LLC
500 14th Street, NW
Atlanta, GA 30318
T: (404) 856-3266
F: (404) 856-3255
E: jmayes@robbinsfirm.com
jalloy@robbinsfirm.com
mparrish@robbinsfirm.com
ebedard@robbinsfirm.com

Frederic J. Bold, Jr.*
BONDURANT MIXSON & ELMORE, LLP
1201 W. Peachtree St., Ste. 3900
Atlanta, GA 30309
T: (404) 881-4100
F: (404) 881-4111
E: bold@bmelaw.com

J. Thomas Clarkson*
GRIFFIN DURHAM TANNER CLARKSON
75 14TH Street NE, Suite 2130
Atlanta, GA 30309
E: tclarkson@griffindurham.com

**pro hac vice forthcoming*