UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW LINGLEY and SANDY PAPADOPOULOS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SEEKING ALPHA, INC.

Defendant.

Case No. 1:23-cv-05849-VM

**DEFENDANT SEEKING ALPHA, INC.'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page(s)**

I. PRELIMINARY STATEMENT ... 1

II. ARGUMENT ... 2

A. The Complaint Fails Because There Is No Investment Advisory Contract ... 2

1. The Court Should Consider the TOU on this Motion ... 2
2. The TOU Is Enforceable ... 3
3. The Language of the TOU Manifests the Parties' Understanding that Seeking Alpha Is Not an Investment Advisor ... 4
4. There Is No Other Investment Advisory Contract ... 5

B. Plaintiffs Fail To Plausibly Allege Seeking Alpha Is an Investment Adviser ... 7

C. No Private Cause Of Action Exists Under New York Law ... 8

D. The TOU Requires Application of New York Law ... 8

E. Plaintiffs Cannot Sue Over "Pro" Because They Are Not "Pro" Subscribers ... 10

III. CONCLUSION ... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allen v. WestPoint-Pepperell, Inc.*,
945 F.2d 40 (2d Cir. 1991)....2

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*,
962 N.E.2d 765 (N.Y. 2011)....8

*Beatie and Osborn LLP v. Patriot Scientific Corp.*,
431 F. Supp. 2d 367 (S.D.N.Y. 2006)....9

*Clark v. Nevis Cap. Mgmt., LLC*,
2005 WL 488641 (S.D.N.Y. Mar. 2, 2005)....6

*Cunningham v. Cornell Univ.*,
2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017)....3

*DDCLAB Ltd. v. E.I. DuPont De Nemours & Co.*,
2005 WL 425495 (S.D.N.Y. Feb. 18, 2005)....5

*In re Celsius Network LLC*,
647 B.R. 631 (Bankr. S.D.N.Y. 2023), leave to appeal denied, 2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023)....3

*In re Citigroup Auction Rate Sec. Litig.*,
700 F. Supp. 2d 294 (S.D.N.Y. 2009)....6

*Int'l Cap. Equip. Ltd. v. Computer Atlanta, Inc.*,
715 F. Supp. 371 (N.D. Ga. 1989)....9, 10

*Kassover v. UBS AG*,
619 F. Supp. 2d 28 (S.D.N.Y. 2008)....3, 6

*KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*,
2020 WL 7251172 (S.D.N.Y. June 29, 2020)....1

*Lowe v. S.E.C.*,
472 U.S. 181 (1985)....7, 8

*Matter of Allstate Ins. Co. (Stolarz)*,
81 N.Y.2d 219 (1993)....10

*Mejia v. Linares*,
219 A.D.3d 1251 (N.Y. App. Div., 1st Dep't 2023)....4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Nanopierce Techs., Inc. v. Southridge Cap. Mgmt. LLC*,
2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003)....10

*Omega Overseas Partners, Ltd. v. Griffith*,
2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014)....5

*People by Schneiderman v. Credit Suisse Sec. (USA) LLC*,
107 N.E.3d 515 (N.Y. 2018)....8

*PRCM Advisers LLC v. Two Harbors Inv. Corp.*,
2023 WL 5152288 (S.D.N.Y. Aug. 10, 2023)....6

*Rapillo v. Fingerhut*,
2016 WL 11705140 (S.D.N.Y. Sept. 14, 2016)....2

*Sajor v. Ampol*,
249 A.D. 852 (N.Y. App. Div. 2nd Dept. 1937)....8

*SEC v. Cap. Gains Rsch. Bureau, Inc.*,
375 U.S. 180 (1963)....5

*Starke v. Gilt Groupe, Inc.*,
2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)....3, 4

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
464 F. Supp. 3d 634 (S.D.N.Y. 2020)....3, 4

*Welsbach Elec. Corp. v. MasTec N. Am., Inc.*,
859 N.E.2d 498 (N.Y. 2006)....9

**STATUTES**

Ga. Code § 10-5-32....9

## I. PRELIMINARY STATEMENT[1]

Plaintiffs seek to rescind an investment advisory **contract that does not exist**; complain about **personalized investment advice that was never given**; and pursue claims under New York law that **prohibits private actions** for failure to register as an investment adviser. Thus, for at least three independent, threshold reasons, the Complaint must be dismissed. In their opposing brief, Plaintiffs try to retrofit their Complaint with unpled and demonstrably false allegations, and arguments that misstate the law entirely. The Court should recognize Plaintiffs' efforts as improper, and as a concession that their pleading is facially deficient. Nothing in Plaintiffs' opposition alters the conclusion that the Complaint fails to state a claim.

First, Plaintiffs have no claim because they have no investment advisory contract. *KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, 2020 WL 7251172, at *10 (S.D.N.Y. June 29, 2020) (Marrero, J.). The TOU is the only contract alleged, and plainly does not call for investment advisory services. On the contrary, the TOU repeatedly manifests the parties' intent not to form an investment advisory relationship. Plaintiffs concede (as they must) that the TOU is not an investment advisory contract. But now, for the first time, they argue that there is some **other** undefined investment advisory contract, and ask the Court to **ignore** the TOU attached as Exhibit A to their Complaint. However, Plaintiffs alleged no such other contract in the Complaint, and identified no other contract in their response to Seeking Alpha's pre-motion letter. Their new argument that such a contract exists is procedurally barred and in any event too vague to sustain a claim. Moreover, any purported other contract is precluded by the TOU's integration clause confirming that it "constitutes [the parties'] entire agreement." TOU, p. 24.

Plaintiffs also argue that the TOU is an unenforceable "browsewrap" agreement. But they

[1] Capitalized terms herein have the meaning set forth in Seeking Alpha's opening brief (ECF 30, "Opening Brief" or "OB"), unless otherwise stated. Plaintiffs' brief (ECF 32) is cited as "PB."

do not so allege (and never raised this issue in their pre-motion letter), and the Court should take judicial notice that the TOU is a fully enforceable "clickwrap" agreement.

Second, Plaintiffs' claims would fail even if they could allege an investment advisory agreement. Plaintiffs fail to rebut that Seeking Alpha is a bona fide publisher offering only disinterested and truthful commentary about financial news and securities, and therefore expressly subject to the Publishers' Exclusion.

Third, Plaintiffs fail to rebut that the New York Martin Act creates no private right of action. This bars not only the claim of New York Plaintiff Lingley, but also the claims of the other prospective class members, who are bound by New York law under the TOU.

## II. ARGUMENT

### A. The Complaint Fails Because There Is No Investment Advisory Contract

To state a claim under the IAA and Blue Sky laws, Plaintiffs must allege that "the parties ... entered into an investment advisory agreement." *Rapillo v. Fingerhut*, 2016 WL 11705140, at *10 (S.D.N.Y. Sept. 14, 2016); *see* OB p. 9 (citing cases). Plaintiffs do not dispute: that the only specific contract they allege is the TOU; that the TOU, on its face, is not an investment advisory contract; or that the TOU repeatedly states that Seeking Alpha is not an investment advisor and subscribers should consult their own financial advisors prior to making investment decisions. OB, pp. 9-10. Under the clear case law in the Opening Brief, the only conclusion from these conceded facts is that Plaintiffs have not pled the existence of the requisite investment advisory contract, and their claim must be dismissed. Each of Plaintiffs' contrary arguments fails.

#### 1. The Court Should Consider the TOU on this Motion

Plaintiffs argue that the TOU should not be considered because it is "beyond the complaint." PB, p. 2. But the TOU is Exhibit A to the Complaint, and "documents appended to the complaint" are properly considered on a 12(b)(6) motion. *Allen v. WestPoint-Pepperell, Inc.*,

945 F.2d 40, 44 (2d Cir. 1991) (citation omitted); *see also* OB p. 7 (citing cases). More to the point, Courts considering IAA claims review the contract at issue on motions to dismiss. *See Kassover v. UBS AG*, 619 F. Supp. 2d 28, 32-33 (S.D.N.Y. 2008) ("the contracts Plaintiffs entered into" are "properly considered in a motion to dismiss"); *see also* OB pp. 9-10 (citing multiple cases dismissing IAA claims upon review of the alleged investment advisory contract).

2. The TOU Is Enforceable

Plaintiffs further argue the Court should disregard the TOU because it is "unenforceable browsewrap." But Plaintiffs **do not allege** in the Complaint: that the TOU is unenforceable; that it is so-called "browsewrap"; or that the website does not "call attention to the Terms of Use or require explicit assent to its terms." PB, p. 15.[2] They make these assertions for the first time in their opposing brief. The Court should not consider these unpled allegations on this motion.

But even if Plaintiffs had made these allegations, the Court would need to reject them as demonstrably false. A potential subscriber cannot create a Premium or Pro account without first being directed to the Terms of Use and clicking a button under a disclosure that reads: "By clicking below, you confirm that you have read, understand and agree to the Terms of Use & Privacy Policy." Nov. 7, 2023 Decl. of Jacob D. Albertson, Ex. A.[3] Because the user must "manifest assent by clicking a button confirming that they accept the terms," the TOU is not "browsewrap," but a "clickwrap" agreement, "routinely enforced under New York law." *In re Celsius Network LLC*, 647 B.R. 631, 649-50 (Bankr. S.D.N.Y. 2023), leave to appeal denied,

[2] Nor, tellingly, were these arguments made in Plaintiffs' pre-motion letter. ECF 23-1.

[3] Federal Rule of Evidence 201(b) permits a court to take judicial notice of information contained on websites where "the authenticity of the site has not been questioned." *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *3 (S.D.N.Y. Sept. 29, 2017). At the 12(b)(6) stage, a court may consider website screenshots in finding a contract to be enforceable clickwrap. *See Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *1-3 (S.D.N.Y. Apr. 24, 2014); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 641 (S.D.N.Y. 2020).

2023 WL 2648169 (S.D.N.Y. Mar. 27, 2023) (citing cases); *see Mejia v. Linares*, 219 A.D.3d 1251, 1252 (N.Y. App. Div., 1st Dep't 2023) (terms and conditions on website were enforceable where a popup screen stated: "By clicking 'Create Account,' you agree to Uber's Terms and Conditions."); *Starke*, 2014 WL 1652225, at *3 (dismissing a claim, relying on moving party's affidavit submitting screenshot showing the agreement at issue was clickwrap); *Valelly*, 464 F. Supp. 3d at 641 (same).

3. The Language of the TOU Manifests the Parties' Understanding that Seeking Alpha Is Not an Investment Advisor

Plaintiffs argue that the language in the TOU—which states that Seeking Alpha provides no personal advice, is not a fiduciary, and is not an investment adviser, and urges subscribers to "discuss [their] investment options with [their] financial advisor" (OB, pp. 5-6)—should have no legal effect because it would result in a "waiver" of Plaintiffs' claim. PB, pp. 8-11. As an initial matter, even setting aside the disclaimers and warnings in the TOU, Plaintiffs would still fail to satisfy their burden because nothing in the TOU could plausibly be read to create, recognize, or even condone an investment advisory relationship. In any event, the disclaimers are not "waivers." They do not "bind[]" any party "to waive compliance with" the IAA. They merely reflect the intent and understanding of the parties not to create an investment advisory contract.

Plaintiffs cannot distinguish the dispositive case law finding that allegations of an investment advisory contract are defeated by contrary disclaimers. OB, pp. 10-11. They only argue that, "[i]n those cases, the parties' relationship was not centered around investment advice, and the allegedly illegal conduct was largely beyond the scope of their agreement." PB, p. 10-11. Plaintiffs' "centered around" distinction is found nowhere in the case law. Regardless, those cases concerned broker agreements, which necessarily **do involve** a relationship with investors' accounts. Here, it is even more apparent that the TOU does not create an investment advisory

relationship, and the "allegedly illegal conduct"—the provision of investment advisory services—would directly conflict with the terms of the TOU.

Tellingly, Plaintiffs' only cited cases address provisions waiving reliance in securities **fraud** cases. *See* PB, p. 8. They have no bearing on Plaintiffs claims, which allege no fraud. Plaintiffs cite one case—*SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180 (1963)—in their attempt to link fraud-related decisions to their claim. But that decision only addresses the anti-fraud provisions of the IAA, holding that the term "fraud or deceit" in the IAA must be "construed like **other** securities legislation **enacted for the purpose of avoiding frauds**." *Id.* at 195 (emphasis added). The decision has no bearing on private causes of action for rescission based on failure to register (indeed, it was decided before such cause of action was recognized).[4]

4. <u>There Is No Other Investment Advisory Contract</u>

The TOU is an enforceable contract that governs the parties' relationship and negates any inference of an investment advisory relationship. It also expressly "constitutes the entire agreement" between the parties, TOU, p. 24, precluding Plaintiffs "from claiming a separate enforceable contract." *DDCLAB Ltd. v. E.I. DuPont De Nemours & Co.*, 2005 WL 425495, at *4 (S.D.N.Y. Feb. 18, 2005). Plaintiffs put the TOU squarely at issue by citing it in, and attaching it to, the Complaint, and it is clear that Plaintiffs meant to rely on the TOU as the requisite investment advisory contract. Tellingly, in their pre-motion letter, Plaintiffs failed to argue that the TOU was not the relevant contract. ECF 23-1. The Court should reject Plaintiffs' effort to erase the TOU from their Complaint.

---

[4] Plaintiffs argue that "parties cannot escape their legal obligations simply by omitting certain specific language." PB, p. 8 (citing *Omega Overseas Partners, Ltd. v. Griffith*, 2014 WL 3907082, at *4 n.5 (S.D.N.Y. Aug. 7, 2014)). Whatever that means, *Omega* does not support Plaintiffs. That case affirms the established rule in the Second Circuit that the IAA "voids only contracts that are made illegally or require illegal performance." 2014 WL 3907082, at *4-5. It does not contradict the decisions cited in the Opening Brief.

Now, however, Plaintiffs urge the Court to ignore the TOU and instead credit their argument that there is some **other** contract. Plaintiffs allege that "Defendant provides personalized investment advice to subscribers of its Premium Services in exchange for compensation," which they now argue (without citation) "is sufficient to constitute a contract for services under New York law." PB, p. 6. But these allegations are plainly insufficient.

In *Kassover*, the plaintiffs "allege[ed] that [the defendant] 'entered into contracts with Plaintiffs and other members of the Class to provide financial advice.'" 619 F. Supp. 2d at 32-33. But the court found that this allegation alone was insufficient to satisfy their burden. *Id.* Instead, the court reviewed the contracts the parties actually "entered into and **the only ones referred to** in the" complaint. *Id.* (emphasis added). Because those contracts were not investment advisory contracts, the bare allegation of some other investment advisory contract failed. *Id.*; *see also In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 308–09 (S.D.N.Y. 2009) ("general allegations" that a contracts exists, absent "specific factual allegations identifying ... the alleged investment advisory contracts," are insufficient). So too here.

Since the only remedy in a private right of action is to void the contract, it is decidedly not enough to allege the existence of an investment advisory **relationship**. "Only parties to an investment advisory contract may sue for rescission." *Clark v. Nevis Cap. Mgmt., LLC*, 2005 WL 488641, at *13 (S.D.N.Y. Mar. 2, 2005); *see also PRCM Advisers LLC v. Two Harbors Inv. Corp.,* 2023 WL 5152288, at *7 (S.D.N.Y. Aug. 10, 2023) (IAA "§ 215 targets *problems in the formation of contracts and in the contents of contracts, and not the actions taken pursuant to contracts*") (citation omitted). Without identifying the contractual terms that are illegal or require

illegal performance, Plaintiffs cannot prevail.[5]

**B. Plaintiffs Fail To Plausibly Allege Seeking Alpha Is an Investment Adviser**

Bona fide publishers like Seeking Alpha are expressly **not** investment advisers under the relevant statutes. OB, pp. 12-17. Plaintiffs' opposing brief cannot rescue their claim.

First, Plaintiffs mistakenly argue that Seeking Alpha's publications do not meet the Publisher's exemption because they "are not offered on any regular schedule." PB, p. 13. But to qualify for the Publishers' Exclusion, the publication need not be "regular" "in the sense of consistent circulation." *Lowe v. S.E.C.*, 472 U.S. 181, 209 (1985). The terms "general" and "regular" in the Publishers' Exemption are meant to "precisely differentiate 'hit and run tipsters' and 'touts' from genuine publishers." *Id.* at 206. Truthful and disinterested offerings like Seeking Alpha's are "regular" under the Publishers' Exclusion. *Id.* Plaintiffs' allegations of irregularity are also conclusory. The website screenshots that Plaintiffs embedded in the Complaint (and therefore properly considered on this motion) show that Seeking Alpha's offering are **updated daily**, made **available for subscribers to read at any time**, and offer **breaking news**. *See* OB, pp. 16-17. Plaintiffs essentially ask the Court to find that any publication that offers special editions or breaking news cannot qualify for the Publishers' Exclusion. This is not the law.

Second, Plaintiffs contend that Seeking Alpha offers personalized advice. But their allegations only show that subscribers may choose to filter what information they receive. There is no allegation that subscribers will receive advice that is tailored to their personal situation, goals, or needs. OB, pp. 13-14. And again, Plaintiffs cite no cases supporting their arguments.

[5] Plaintiffs argue that "[u]nder Seeking Alpha's definition, a contract must *expressly* state that it is a contract for the provision of investment adviser services." PB, p. 7. Seeking Alpha does not so argue. A contract need not be titled "Investment Advisory Contract"; however, it must manifest on its face an understanding that such a relationship was established. At the very least, **the contract must actually exist**. Here, the TOU is plainly not an investment advisory contract, and the other contract that Plaintiffs vaguely describe in their opposition is not a contract at all.

Their only two cases—*Park* and *Weiss*—merely establish, consistent with *Lowe*, that defendants who mislead subscribers, tout securities in which they have an interest, and exert authority over subscribers' funds are not eligible for the Publishers' Exclusion. OB, pp. 14-16. No such allegations have been or could plausibly be made about Seeking Alpha.[6]

### C. No Private Cause Of Action Exists Under New York Law

No private or implied cause of action exists under the Martin Act. OB, pp. 19-20. Plaintiffs appear to concede this, and instead argue a right to seek common law rescission because: (1) the Martin Act makes it unlawful to engage as an investment adviser without registering; and (2) New York common law allows rescission of illegal contracts. PB, p. 17. By their admission, Plaintiffs' claim necessarily relies on a finding that the conduct is illegal under the Martin Act, and therefore "is predicated solely on a violation of the Martin Act ... *and would not exist but for the statute*." *People by Schneiderman v. Credit Suisse Sec. (USA) LLC*, 107 N.E.3d 515, 520 (N.Y. 2018); *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 962 N.E.2d 765, 770 (N.Y. 2011). New York law expressly prohibits such claims. OB pp. 20-21.[7]

### D. The TOU Requires Application of New York Law

Plaintiffs argue that the TOU's New York choice of law clause does not apply because the TOU is not enforceable. This argument fails, as discussed *supra* § II.A.2. Plaintiffs' other arguments in opposition to applying New York law likewise fail, as discussed below.

Plaintiffs' conclusion that choice of law clauses are invalid as applied to Blue Sky claims cannot be squared with the cases cited in the Opening Brief, which dismiss out-of-state Blue Sky

[6] Plaintiffs' unpled allegations, offered in their brief, that Seeking Alpha's "illegal investment advice" caused subscribers to "suffer[] significant losses" (PB, p. 1) must be disregarded.

[7] This black-letter law is not undermined by Plaintiffs' citation to a 1937 Appellate Division order, which contained "[n]o opinion," cited no authorities, and had never been cited in the interceding 86 years until Plaintiffs' brief. *See* PB, p. 19, citing *Sajor v. Ampol*, 249 A.D. 852 (N.Y. App. Div. 2nd Dept. 1937). Plaintiffs' other case, *Atkins*, did not relate to the Martin Act.

claims on the basis of New York choice of law clauses. OB, pp. 18-19. (Plaintiffs do not even attempt to distinguish *Malon*, which stands for this exact proposition.).

Since New York indisputably bears a "reasonable" relationship to the claims (OB, p. 18), Plaintiffs may only defeat the choice of law clause if it would violate some public policy. But because of the "basic precept ... that agreements should be construed to effectuate the parties' intent," the public policy exception is "reserved" for instances where the chosen law would be "truly obnoxious" to a fundamental public policy of another state. *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 501 (N.Y. 2006). Moreover, the sister state's law cannot apply unless it "would govern this dispute in the absence of the" choice of law provision. *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006).

Here, Plaintiffs cannot show that another state's law would apply absent the choice of law provision. The Georgia Blue Sky law (like many others) regulates only entities who "transact business in this state as an investment adviser." Ga. Code § 10-5-32. Although no Georgia court has interpreted that phrase in the context of investment advisors, the identical phrase in a similar statute (concerning registration of foreign corporations) is interpreted to apply to foreign entities "only where the local activities of the foreign corporation are not merely ancillary to the interstate features, but constitute a substantial local and domestic business separate from its interstate business." *Int'l Cap. Equip. Ltd. v. Computer Atlanta, Inc.*, 715 F. Supp. 371, 372 (N.D. Ga. 1989) (citation omitted). In *International Capital*, a foreign entity was held not to "transact business" in Georgia where it had no offices or employees in Georgia, and its contracts with customers were prepared in New York, sent by mail to customers, and returned to New York. *Id.* The court noted that even where a foreign company had "numerous contacts with Georgia including trips [and] advertising," it would still not be "transacting business in"

Georgia if its primary business was interstate. *Id. See also* 17A Fletcher Cyc. Corp. § 8479 (collecting cases for the proposition that a foreign corporation cannot "be regarded as doing business in the state when it performs acts in the state incidental to interstate commerce").

Plaintiffs have made no allegations sufficient to satisfy these prerequisites to apply the Blue Sky laws of another state. Seeking Alpha is alleged to do business in New York. Compl. ¶ 15. No other state is alleged to have a connection to Seeking Alpha. Accordingly, Plaintiffs cannot show that any other state's laws would apply even absent the choice of law provision.[8]

Nor do Plaintiffs cite any case holding that application of New York law would be "truly obnoxious" to the fundamental policy of another state. The closest they come is their citation to a footnote in *Nanopierce Techs., Inc. v. Southridge Cap. Mgmt. LLC*, 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003), which purports to state that application of New York choice of law "should be against public policy." But the quoted language is itself a quotation of a secondary source, which is **contrary to the holding of the court** that the parties "signed a contract choosing New York law, and they are now bound by that choice." *Id.* at *6.

### E. Plaintiffs Cannot Sue Over "Pro" Because They Are Not "Pro" Subscribers

Plaintiffs oppose dismissal of their claims as to Seeking Alpha Pro because they "have Article III standing to sue in their own right." PB p. 25. But they do not have standing to sue over Pro because they do not subscribe to Pro, and therefore have not suffered injury related to Pro. This is not a problem with the putative class, but with the named Plaintiffs themselves.

## III. CONCLUSION

The Complaint should be dismissed in its entirety, with prejudice.

[8] *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 226 (1993), which Plaintiffs cite, is not to the contrary. That case involved a policy sold in New Jersey by a New Jersey company to a New Jersey customer. New York thus "ha[d] no governmental interest." *Id.*


DATED: New York, New York
November 7, 2023

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Jacob D. Albertson

Jacob D. Albertson (j1a@msk.com)
Eleanor M. Lackman (eml@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10017-1028
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

Kevin E. Gaut (keg@msk.com)
(*admitted pro hac vice*)
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Tel: (310) 312-2000
Fax: (310) 312-3100

*Attorneys for Defendant Seeking Alpha, Inc.*